EVA. CRONISER, Claimant, *v.* STATE OF NEW YORK, Defendant.
(Claim No. 28835.)

Court of Claims, July 5, 1949.

*Bartle Gorman* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Donald C. Glenn* of counsel), for defendant.

GORMAN, J. The accident which is the subject of the claim occurred at 10:00 A.M. on November 15, 1946, about seven miles north of the city of Utica, New York, at the intersection of State highway Route No. 8, and county highway No. 31, also known as Miller Road. Route No. 8 is a main highway running generally north and south, and is a two-strip concrete pavement eighteen feet in width with five-foot shoulders. Miller Road intersects but does not cross Route No. 8 from the west and is a fourteen-foot macadam highway connecting Route No. 8 with State highway Route No. 12. It is a fairly well-traveled county road. The highway from the north is straight as it approaches the intersection of Miller Road, rising over a knoll approximately 300 feet northerly of that point, then descending southerly at a grade of 7% through the intersection. Miller Road obtains its level with Route No. 8 by means of an earthen cut along its northerly line about five feet in depth as it approaches the intersection. There is also a similar cut along the west shoulder of the State highway in that vicinity so that Miller Road is obscured even after passing the high point of the knoll by reason of the earthen embankments. Field vegetation at the corner further restricted visibility from the north and west. The evidence describes a hazardous intersection with limited sight distance and establishes that Route No. 8 was a through highway leading to Utica from the north.

Claimant was riding as a passenger in a 1937 ton-and-a-half Ford truck, driven by Irving Croniser, southerly on Route No. 8, which came into collision with a De Soto sedan driven by one Mrs. Jiampietro, as the latter was turning northerly into the State highway from Miller Road. As a result of the accident, claimant suffered serious and permanent injuries.

Prior to the time of the accident, a standard cast iron crossing warning sign had been erected by the State about 400 feet north

of the intersection on the west shoulder of the highway. It appears that this sign was struck and destroyed in the winter of 1944–45, and had not been replaced. The only warning existing at the time in the locality was a stop-through traffic sign standing on the south shoulder of Miller Road, approximately twenty-seven feet from the west edge of the State highway. About ten feet from the intersection there was also painted on the Miller Road pavement the word " Stop ". At the time of the accident there were no warning signs, speed signs, or any other precautionary methods in operation along Route No. 8 calling to the attention of southbound traffic the imminence of danger just over the crest of the hill. The maximum legal speed of fifty miles per hour was permitted upon Route No. 8 in the vicinity of Miller Road, both north and south of the intersection.

The accident happened in the country on a clear dry day in a sparsely settled locality. The single issue of negligence concerns whether the State has breached a duty owing to claimant in respect to the control of traffic at the intersection and the erection and maintenance of adequate traffic control signs or other precautions, under the circumstances. The crux of the case is whether the intersection was dangerous to southbound travelers because of the knoll, restricted sight distance and other unusual conditions, and whether the State, in the exercise of reasonable care, should have warned such motorists to proceed with caution and reduce speed approaching the intersection.

The rights of persons using a highway for travel are mutual and co-ordinate, and it is the duty of each so to exercise his right of passage as not to cause injury to another having a like right. Each must exercise ordinary or reasonable care. It was likewise the duty of the State to guard against such dangers as could or ought to have been anticipated or foreseen in the exercise of reasonable prudence and care. (*Snowden* v. *Town of Somerset*, 171 N. Y. 99; *Juliano* v. *State of New York*, 190 Misc. 180.) The State must maintain its highways in a reasonably safe condition for travel at all times. (See *Doulin* v. *State of New York*, 277 N. Y. 558.) This duty includes the duty of giving adequate warning of dangerous conditions in the highway. General jurisdiction over such matters has been delegated by the Legislature to the State Traffic Commission. The commission may order the erection and maintenance of a traffic control signal on or along any highway where such warning is deemed necessary. (Vehicle and Traffic Law, § 95-a.) The commission also has the power and the duty to regulate the type,

location, erection and maintenance of all traffic control signals along State highways, and may, in its discretion, act similarly with reference to intersecting roads. (Vehicle and Traffic Law, § 95-d.) It may restrict the speed at which vehicles may proceed on or along State highways outside of cities or incorporated villages and any such speed zone shall be adequately marked with suitable warning signs. (Vehicle and Traffic Law, § 95-c.) It has the power to adopt rules and regulations to effectively carry out the foregoing. (Vehicle and Traffic Law, § 95-h.) The State has waived immunity from liability on account of the negligence of its officers and employees who were charged with this duty. (Court of Claims Act, § 8; *Karl* v. *State of New York,* 279 N. Y. 555.)

The commission's policy in relying upon stop signs on secondary roads to expedite travel on main thoroughfares without further warning signs, while commendable in purpose, may not be extended to dangerous and unusual situations fraught with peril reasonably to be foreseen and which necessarily should be guarded against. Warning must be given as circumstances reasonably demand in the exercise of good judgment and reasonable care. (See *Barna* v. *State of New York,* 267 App. Div. 261, affd. 293 N. Y. 877; *Ziehm* v. *State of New York,* 270 App. Div. 876; *Dawley* v. *State of New York,* 186 Misc. 571.) The signs erected must be sufficient for the purpose intended. (*Trimble* v. *State of New York,* 263 App. Div. 233; *Laitenberger* v. *State of New York,* 190 Misc. 633, affd. 273 App. Div. 942.)

Prior to the accident, the State made no traffic count on Miller Road in this vicinity. The evidence is uncontradicted that Mrs. Jiampietro brought her car to a stop somewhere near the intersection. If she stopped at or near the stop sign she would have had approximately fifty feet to travel before the rear of her car would clear the westerly lane of Route No. 8. In addition to being under a legal duty to bring her car " to a full stop at or close to the intersection " (Vehicle and Traffic Law, § 95-d) she was under the corelative duty of thereafter proceeding with caution and maintaining a proper lookout for approaching traffic. (*Ward* v. *Clark,* 232 N. Y. 195; *Walter* v. *State of New York,* 187 Misc. 1034.) Considering that it would be necessary for her to shift gears and accelerate speed in making an uphill turn, the margin of calculation would be too close. The Croniser truck, if proceeding at the legal speed of fifty miles per hour, would have been upon her in approximately four seconds from the top of the knoll.

It seems clear that the absence of any warning or speed reduction signs along Route No. 8 inaugurated a chain of events which culminated in this accident. (See *Foley* v. *State of New York,* 265 App. Div. 682.) The collision was due to failure of sight and distinguishment at a time when sight should have been aroused and guided by proper warning. (*Martin* v. *Herzog,* 228 N. Y. 164; *Neddo* v. *State of New York,* 194 Misc. 379, affd. 275 App. Div. 492.) Negligence is indicated in failing to maintain warning signs such as are commonly found at places where less danger is to be apprehended than that encountered here. (See *Van De Walker* v. *State of New York,* 278 N. Y. 454.) Such negligence was a proximate cause of the accident. Adequate and proper warning would have resulted in a slower speed and in a quicker realization of the dangers ahead. The State, through its officers, agents and employees, were fully aware of the unusual situation surrounding this hidden intersection and could have reasonably anticipated and foreseen the occurrence of such an accident, under the conditions existing at the time. (See *Palsgraf* v. *Long Island R. R. Co.,* 248 N. Y. 339; *Bennett* v. *New York & Queens Elec. Light & Power Co.,* 294 N. Y. 334; *Torrey* v. *State of New York,* 266 App. Div. 900.) Liability follows where an injury is the natural and proximate consequence of neglect of duty. (*LeBoeuf* v. *State of New York,* 281 N. Y. 737.) "The mere fact that the State's negligence alone was not enough to produce the injury without the co-operation of the drivers of the cars, does not break the chain of causation or relieve the State from liability." (*Foley* v. *State of New York,* 265 App. Div. 682, 686, *supra.*) We think that the negligence of the State concurred with any negligence of Mrs. Jiampietro to produce the injuries received by this passenger claimant and that she, being free from any contributory negligence, is entitled to a recovery. (See *Torrey* v. *State of New York,* 266 App. Div. 900, *supra*; *Barna* v. *State of New York,* 267 App. Div. 261, affd. 293 N. Y. 877, *supra.*)

In the accompanying decision an award has been made to claimant for the pecuniary loss she has sustained.