484 P.2d 660

George HLAVATY and Shirley Mae Hlavaty, husband and wife, Appellants,

v.

Jack J. SONG and Alice Song, his wife, dba China Lil Restaurant, Appellees.

No. I CA–CIV 1436.

Court of Appeals of Arizona, Division 1.

May 12, 1971.

Rehearing Denied July 1, 1971.

Review Granted Sept. 21, 1971.

Evans, Kitchel & Jenckes by Robert R. Mills, Phoenix, for appellants.

Anderson & Holloway by Jack M. Anderson, Phoenix, for appellees.

HATHAWAY, Judge.

Shirley Hlavaty, while attempting to seat herself at a table in appellees' restaurant, fell and sustained personal injuries. This lawsuit was filed to collect damages for those injuries. The case proceeded to trial before a jury and at the close of the plaintiffs' case the court directed a verdict in favor of defendants, owners and operators of the restaurant. Appeal is from the judgment entered for defendants and from the order denying plaintiffs' motion for new trial.

Plaintiffs contend that the court erred in directing a defense verdict and in admitting certain evidence and asks that we reverse the judgment and remand for a

**508**

new trial. The motion for directed verdict, of course, admits the truth of all competent plaintiffs' evidence and all inferences that may be reasonably drawn therefrom. Daugherty v. Montgomery Ward, 102 Ariz. 267, 428 P.2d 419 (1967); Figueroa v. Majors, 85 Ariz. 345, 338 P.2d 803 (1959). Where the evidence is such that reasonable men may differ, then the question is one for the jury. Ibid.

On December 10, 1965, the Hlavatys and another couple went to China Lil's, defendants' restaurant located in Scotsdale, Arizona, for their evening meal. The defendant, Mr. Song, escorted them to a table where he proceeded to seat the other lady in the party. Mrs. Hlavaty attempted to seat herself at a corner seat and testified that, " * * * I squeezed in between the table and the screen and pulled the chair out to seat myself because it was really tight quarters and I didn't think George could seat me so I pulled it out and I went ahead and just sat down, and started to sit and just as I started to plant my seat my chair went backwards and I fell out of the front of me and I just hit the floor bang." Mr. Song remarked, "Gee, I was afraid something like that was going to happen, the floor is just polished too highly."

Counsel for the defendant-appellees has directed our attention to testimony which it is contended served as a predicate for the trial court's direction of verdict in favor of defendants. Included is testimony that Mrs. Hlavaty did not wait to be seated by Mr. Song and did not wait to be assisted by anyone. Appellees assert in their brief that "she tried to 'scoot' into the chair." The transcript reference given for this statement, however, refers to "scooting" of the chair. Subsequent testimony relating to the circumstances of the fall, does appear pertinent as revealed by the following excerpts:

"Q. All right. And you attempted to scoot your seat into the chair, correct?

A. Scoot, slide to me mean the same thing.

\* \* \* \* \* \*

Q. You pushed it to one side, did you?

A. I believe I just pushed it aside a little bit, you know, to move it out from the table a little bit for myself to scoot in there.

\* \* \* \* \* \*

Q. Okay. Now, it is true, is it now, that as you started to seat yourself your buttocks missed the chair, is that correct, the seating portion of the chair and you fell to the floor?'

A. I don't think so, I don't know if it missed, all I know is I was attempting to put it down there and the chair just went out from underneath me, I must have missed it.

Q. You agree that your buttocks missed the chair, do you not, ma'am?

A. It was aiming at it, let's put it that way.

Q. You have used the words 'it missed,' have you not, Mrs. Hlavaty, in your deposition?

A. Yes, I imagine I have.

Q. Let me read it to you. Page 16, line 7: 'A. Well, evidently it started to hit, you know, and during the process of sitting it missed and it scooted, the chair scooted from me as I started to sit. Q. In other words, you didn't get your whole buttocks firmly in the chair? A. Planted. Q. Or planted?

A. Right.'

Q. Is that the way it happened, ma'am?'

A. Yes, sir.

Q. You were sort of sliding in on the chair, weren't you, as distinguished from sitting down on it squarely?'

A. Yes, sir, I was sort of sliding into it this way.

\* \* \* \* \* \*

Q. \* \* \* Mrs. Hlavaty—I'll ask you again, do you think if you put all your weight squarely on the chair you would have had this fall?

509

WITNESS: If I had put all my weight squarely in the chair?

Q. Would you have had this fall?

A. Directly in the chair?

Q. I'll ask you again; do you think if you had put all your weight squarely in the chair you would have had this fall?

A. No, probably I wouldn't.

Q. All right. If you had sat down and held the chair, do you think you would have had the fall?

\* \* \* \* \* \*

A. Probably not."

Nowhere in the evidence is it shown that the fall was caused by the condition of the premises, and appellant's foregoing testimony seems to repudiate that possibility. Accepting that testimony, the fall appears to have resulted from appellant's poor aim. We are therefore of the opinion that the trial court properly entered the directed verdict against appellants. In view of this conclusion, it is unnecessary for us to consider the evidentiary matter raised.

Affirmed.

KRUCKER, C. J., and HOWARD, J., concur.